CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 14, 2024

LAURA A. AUSTIN, CLERK
BY:
        s/A. Beeson
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

JUSTIN DEWAYNE SKAGGS,              )
                                   )
            Plaintiff,             )       Case No. 7:23-cv-00076
                                   )
v.                                 )       **MEMORANDUM OPINION**
                                   )
STEVEN CLEAR, *et al.*,            )       By:   Hon. Thomas T. Cullen
                                   )             United States District Judge
            Defendants.            )

Plaintiff Justine Dewayne Skaggs ("Plaintiff"), a Virginia inmate proceeding *pro se*, brings this civil rights action under 42 U.S.C. § 1983 against Stephen Clear[1] ("Defendant"), the Superintendent of the Southwest Virginia Regional Jail Authority ("SWVRJA"), and multiple John Does (collectively "John Does"). Plaintiff alleges that, while he was housed at SWVRJA's Abingdon facility, Defendant and others (the John Does) violated his due process rights when they charged him for "refusing housing" without notice or the opportunity to be heard. Defendant has moved to dismiss.[2] For the reasons discussed below, the court will grant Defendant's motion to dismiss for failure to state a claim.[3]

---

[1] Plaintiff erroneously identified Defendant as "Steven" instead of "Stephen" in his complaint. The Clerk is directed to update the docket to reflect the correct spelling.

[2] The court notes that Plaintiff failed to file an opposition to Defendant's motion to dismiss, despite receiving a notice under *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising him that, if he failed to respond to the motion to dismiss, "the Court will assume that [he] has lost interest in the case, and/or that [he] agrees with what the Defendant states in their responsive pleading[s]." (ECF No. 19.)

[3] Defendant John Does are not parties to the motion to dismiss because they have not been made aware of this action. On May 24, 2023, the court directed Plaintiff to provide the court with sufficient additional information to identify the John Does. (*See* ECF No. 14.) The court warned that failure to provide the information within the time allotted would result in dismissal of the John Does. Thereafter, Plaintiff attempted to amend his complaint piecemeal twice (ECF Nos. 16 & 20), and the court directed him—on three different occasions—to file a full amended complaint (ECF Nos. 17, 21, & 24). In its most recent order, the court advised Plaintiff that

# I.   BACKGROUND

The facts are taken from Plaintiff's *pro se* complaint and, at this stage, are presumed true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff claims that, in January 2023, he received "threats of violence to [his] person from Aryan gang members" and was informed that the gang had a "smash-on-site" order put out on him because of his alleged cooperation with the authorities regarding an investigation into an Aryan Gang member. (Compl. 4 ¶ 1 [ECF No. 1].) After uncovering this information, Plaintiff alleges he told Correctional Officer ("C/O") Cook of the threat and his fear for his safety. (*Id.* ¶ 2.) Plaintiff then claims C/O Cook brought the situation to Sergeant Wright's attention. (*Id.*) After talking to Plaintiff, Sergeant Wright removed Plaintiff from the pod and placed Plaintiff in protective custody. (*Id.*) Neither C/O Cook nor Sergeant Wright are named as parties to this suit.

Once Plaintiff was moved to protective custody, Plaintiff learned that he had been given a "Charge 244" for refusing housing.[4] (*Id.* ¶ 3.) Plaintiff does not allege who filed the disciplinary charge against him. As a result of the disciplinary charge, Plaintiff claims his phone, messaging, and commissary privileges were withheld. (*Id.*) Plaintiff further alleges that the offense he was charged with was not listed in SWVRJA's policy book, that he was never given notice of the disciplinary charge, that he was never given the opportunity to be heard at an in-

---

if he did not file an amended complaint in response to the order, the court would "assume that Plaintiff stands on his current complaint ([ECF] No. 1) and waives his right to amend." (ECF No. 24 at 2.) Plaintiff did not respond to the court's order. Because Plaintiff has failed to comply with the court's order, the court will dismiss all claims against the John Does without prejudice. *See* Fed. R. Civ. P. 41(b).

[4] According to Plaintiff, a "Charge 244" is "[a]ny act, not specifically listed as a rule, resolution, or prohibited act, which poses a risk to the safe, secure, and orderly operation of the facility and/or public safety". (Compl. 6 [ECF No. 1].)

house hearing, and that he was therefore unable to dispute the allegations against him. (*Id.* ¶ 4.) Plaintiff says the "punishment" from the "Charge 244" lead to an increase in his symptoms of depression, mental duress, and anxiety, and seeks damages and a transfer to a different facility. (*Id.* at 5 ¶ 5.)

## II.     STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678–79.

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Id.*; *see Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a

plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "liberal construction of the pleadings is particularly appropriate where . . . there is a pro se complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. Feb. 8, 2021) (quoting *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999)).

## III.    ANALYSIS

Plaintiff filed his complaint alleging violations under 42 U.S.C. § 1983. Section 1983 creates a private cause of action against anyone who,

> under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .

42 U.S.C. § 1983. To state a cause of action under § 1983, a plaintiff must allege facts that, if true, would show that he has been deprived of rights guaranteed by the Constitution or laws of the United States, and that the deprivation resulted from conduct committed by a person acting

under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). In other words, a §1983 claim requires the facts in the complaint to allege personal involvement *for each defendant. See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017).

Recently, the Fourth Circuit has emphasized that allegations in a complaint against "defendants" in reference to an act committed generally is insufficient to state a claim under § 1983 against any individual defendant. *Langford v. Joyner*, 62 F.4th 122, 125 (4th Cir. 2023). In *Langford*, the Fourth Circuit was "critical of complaints that fail to isolate the allegedly unconstitutional acts of each defendant, or that make only categorical references to defendants." *Id.* (cleaned up). The Fourth Circuit reasoned that, in demanding the plaintiff provide specific factual allegations for every defendant, it "gives fair notice to *that* defendant of the plaintiff's claim and the underlying factual support." *Id.* (emphasis in original). In other words, when a plaintiff relies on the collective "defendants" is his complaint, he fails to state a claim against any defendant individually. *Id.*

In his complaint, Plaintiff failed to identify any action or inaction taken by Defendant. The only individuals identified by name in the complaint—C/O Cook and Sergeant Wright—are not named parties in this litigation. Since Plaintiff has not identified any action or inaction by Defendant that resulted in the violation of his rights, Defendant's motion must be granted.[5]

---

[5] To the extent Plaintiff attempts to argue liability under a theory of *respondeat superior*, it has been well established that no such liability will attach under a § 1983 for the actions of subordinates. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–92 (1978). Nonetheless, a supervisory official may be liable for his subordinate's acts if the supervisor himself bears personal responsibility for those acts. *Iqbal*, 556 U.S. at 676. "Liability in this context is not premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed

## IV.     CONCLUSION

For the reasons discussed above, Plaintiff's complaint fails to state a claim against Defendant, and the claims against him must be dismissed. Additionally, as Plaintiff has been given multiple opportunities to identify the "John Does" by filing an amended complaint but has failed to do so, the claims against them will be dismissed without prejudice.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 14th day of March, 2024.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

to their care." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).
    In order to prevail on a claim for supervisory liability, a plaintiff must show the "*Shaw* elements":

> (1) that the supervisor had actual or constructive knowledge that [his] subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). Establishing a "pervasive" and "unreasonable" risk of harm under the first element requires evidence that the conduct is widespread, or at least has been used on several different occasions, and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. *Slakan*, 737 F.2d at 373–74. A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses." *Id.* at 373. Overall, "[t]he plaintiff . . . assumes a heavy burden of proof in supervisory liability cases," for "[h]e must not only demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" *Id.* at 372 (quoting *Orpiano v. Johnson*, 632 F.2d 1096, 1101 (4th Cir. 1980)) (alteration in original). "[H]e cannot satisfy [this] burden of proof by pointing to a single incident or isolated incidents." *Id.*
    Because Plaintiff has failed to allege any actions or inactions by Defendant, he has not demonstrated that he should be held liable under a theory of supervisory liability.